Auguste Dorn, as Administratrix, etc., of Laura Schemanska, Deceased, Appellant, v. The Town of Oyster Bay, Respondent.

*Town — damages for alleged defect in its highways — what justifies a recovery — duty of highway commissioners — relative obligations of towns and other municipal corporations.*

The towns of the State of New York are its primary political divisions. They are erected and organized by statute; all their duties and obligations are prescribed by statute, and they derive their capacity and powers from the same source. Modern legislation has endued them with powers and imposed upon them obligations similar to those possessed by municipal corporations.

Before a recovery can be had against a town, in an action brought to recover damages resulting from the death of the plaintiff's intestate caused by an alleged defect in a highway within its borders, it must be made to appear that the obstruction in the highway which caused the injury existed by reason of the neglect of the commissioners of highways of the town.

The duty of commissioners of highways in relation to the removal of obstructions or the reparation of defects in highways is a qualified one. They are required to exercise reasonable care under all the circumstances, and their negligence is the omission of such care.

The towns of the State of New York are not required to maintain the highways within their borders in a condition of absolute safety, and their commissioners of highways are not bound to constant vigilance and inspection of the roads. Ordinary care is the limit of responsibility, and that denotes such care and conduct on their part as a reasonable and prudent person would ordinarily exercise under similar circumstances.

There is an obvious difference between the obligations of rural towns and municipal corporations, like cities and villages, in respect to the care of highways, and the rule is more stringent in respect to the latter than the former. The fact that towns have been made by legislative enactment municipal corporations does not change this rule, because the reason for it still exists.

Appeal by the plaintiff, Auguste Dorn, as administratrix, etc., of Laura Schemanska, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 27th day of June, 1894, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the Queens County Circuit, and also from an order entered in said clerk's office on the 16th day of June, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*Paul E. De Fere*, for the appellant.

*F. H. Van Vechten*, for the respondent.

DYKMAN, J. :

The towns of this State are the primary political divisions.  As they exist here they were unknown to the common law, and are all of statutory creation.  They were erected and organized by statute, and all their duties and obligations are prescribed by statute, and they derive their capacity and powers from the same source.  In the earlier history of the State their capacity was limited, and their duties and liabilities were but few.  By the Revised Statutes, each town as a body corporate had capacity to purchase or hold property for certain purposes, to sue and be sued, and to make certain contracts in relation to corporate property and affairs.  Modern legislation has, however, enlarged their capacity and endued them with powers and imposed upon them obligations similar to those possessed by municipal corporations.

During the war of the Rebellion the Legislature passed laws directing the different towns to borrow money to pay bounties to soldiers, and issue bonds of the town as security for their payment.

About the year 1865 several special statutes were enacted by the Legislature providing for the opening and grading of wide avenues in Westchester county, and directing the county treasurer to issue bonds of the several towns through which the avenues were to be constructed to pay for the improvements.  It was decided that the Legislature possessed the power to direct the improvements and impose the burden of paying therefor upon the different towns. (*People ex rel. McLean* v. *Flagg*, 46 N. Y. 401.)

So the towns were made legal entities, and clothed with power to incur obligations, and become liable for their payment.  Finally the Legislature has declared that " a town is a municipal corporation, comprising the inhabitants within its boundaries, and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as have been or may be conferred or imposed upon it by law." (Laws of 1890, p. 1211, chap. 569, § 2.)  So the liability of towns for injuries caused by defects or obstructions in highways is also the result of modern legislation.

Planting themselves upon the fact that the towns had no ownership or interest in the highways within their borders, that even their use did not pertain exclusively to the inhabitants of the towns, but

only in common with the whole people, that the officers having the care of the highways were not the agents of the towns, and received no instructions from them, the courts in the earlier cases refused to entertain suits against the towns for the recovery of damages for accidents on the highways therein. As late as the year 1864 the right to maintain such actions was substantially denied in the Court of Appeals in the case of *Garlinghouse* v. *Jacobs* (29 N. Y. 300), and it was said in that case that from the organization of the State government down to 1820 there was no known instance in this State of an attempt to enforce a civil remedy in respect to highways. Finally, in 1870, the Court of Appeals decided in favor of the right to maintain such actions against commissioners of highways. (*Hover* v. *Barkhoof*, 44 N. Y. 113.)

After that time actions of that character were frequently sustained down to 1881, when the towns were made liable by a special statute (Laws of 1881, chap. 700) for damages to persons and property sustained by reason of defects in highways and bridges, in cases where the commissioners of highways were then liable therefor. In 1890 the towns were made absolutely liable for all damages to persons and property sustained by reason of defects in highways or bridges existing by reason of neglect of commissioners of highways of such town. (Laws of 1890, p. 1181, chap. 568.)

This examination manifests the gradual development of the powers and liabilities of the towns in this State, and shows that the underlying reason for the liability of the town for injuries sustained upon the public roads is the negligence of the commissioners of highways. The case before us is an appeal by the plaintiff from a judgment entered upon a nonsuit at the Circuit, and from an order denying a motion for a new trial on the minutes of the court.

The suit is for the recovery of damages resulting from the death of the plaintiff's intestate, which is alleged to have been caused by the defective condition of a highway in the town of Oyster Bay, existing by reason of the negligence of the commissioners of highways of that town. The material facts are these: The plaintiff was driving two horses attached to a covered baker's wagon on Tuesday, the 21st day of February, 1893, between six and seven o'clock in the evening, along a public highway between Bethpage and Farmingdale in the town of Oyster Bay. The wagon was upset

in a bank of snow, the rear part fell upon the daughter and she was killed. A snow storm accompanied with wind commenced in that locality five or six days previous to the accident, and continued with more or less regularity and severity until three o'clock on Monday, the day before the accident. The snow was blown and drifted into the road for about one-eighth of a mile in the vicinity of the accident. The snow bank was about three feet deep at that point. Before a recovery can be had against a town in an action of this character, it must be made to appear that the obstruction in the highway which caused the injury existed by reason of the neglect of the commissioners of highways of the town, and we find the record in this case destitute of proof to establish that essential fact. The time which elapsed between the cessation of the storm of snow and wind at three o'clock on the afternoon of Monday and six o'clock in the evening of Tuesday, when the accident happened, was insufficient to afford time to the commissioners of highways to ascertain the existence of the obstruction in the highway and an opportunity to remove the same. The duty of commissioners of highways in relation to the removal of obstructions or the reparation of defects is a qualified one. They are required to exercise reasonable care under all circumstances, and their negligence is the omission of such care. The towns in this State are not required to maintain the highways within their borders in a condition of absolute safety, and their commissioners of highways are not bound to constant vigilance and inspection of the roads. Ordinary care is the limit of responsibility and that denotes such care and conduct on their part as a reasonable and prudent person would ordinarily exercise under similar circumstances. (*Lane* v. *Town of Hancock*, 142 N. Y. 510.)

Tested by these rules the evidence was entirely insufficient to support a verdict in favor of the plaintiff. The duty resting upon municipalities in relation to the removal of accumulations of ice and snow from streets and sidewalks within their limits has been so much and so recently discussed as to render the pursuit of the subject by us unprofitable. (*Lane* v. *Hancock*, *supra* ; *Hubbell* v. *Yonkers*, 104 N. Y. 435.)

It is to be observed, however, that there is an obvious difference between the obligations of rural towns and municipal corporations,

like cities and villages, in respect to the care of highways, and the rule is more stringent in respect to the latter than the former. (*Hyatt* v. *Trustees of Rondout*, 44 Barb. 386.)

The fact that the towns are now made municipal corporations will not change this rule, because the reason for it still exists. The facts and circumstances disclosed were insufficient to justify a jury in finding a verdict for the plaintiff, and a nonsuit was, therefore, properly granted. (*Lane* v. *Hancock, supra.*)

The judgment and order denying the motion for a new trial should be affirmed, with costs.