(117 App. Div. 849)

BRENNAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 15, 1907.)

1. MUNICIPAL CORPORATIONS—ICE AND SNOW ON SIDEWALK—ACTIONS.

Where plaintiff sued a city for injuries caused by slipping upon a curb at a street corner and falling upon a cross-walk, alleging she could not balance herself on the cross-walk because it was covered with snow and ice, she could not recover, the proximate cause of the fall being her slipping on the curb as to which no allegation of negligence on the part of the city was made.

2. SAME—DUTY OF CITY.

When owing to a temporary condition of the weather—rain and snow, thawing and freezing, alternate—the city is not required to clear its cross-walks of every fall of snow or covering of ice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1629.]

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Sadie Brennan against the city of New York. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, MILLER, and GAYNOR, JJ.

James W. Covert (James D. Bell, on the brief), for appellant.
Robert Stewart, for respondent.

GAYNOR, J. The plaintiff testified that she slipped on the curb at the corner of two streets and fell on the cross-walk; that she could not balance and save herself on the cross-walk on the ice and snow there, of which she gives no description. The first of her three witnesses to the accident says he saw her "slip off the sidewalk," try to balance herself in the gutter and fall on the cross-walk; and that the sidewalk and cross-walk were "icy," had "trodden down snow" on them, "packed snow" about "an inch or two thick," and that she fell thereon. The next says substantially the same as to the place and manner of her slip and fall; and he describes the cross-walk only as having trodden snow on it, "and the cold weather froze it right over,

formed ice." The witness last saw the plaintiff as she fell on the cross-walk two feet in front of him on what he finally calls "frozen snow." He says nothing of her slipping from the curb.

No one but the first witness says there was packed or frozen snow or ice on the sidewalk. The complaint only alleges they were on the cross-walk, and the case was tried on that basis. The accident happened at about half after 8 o'clock, Tuesday evening, February 16th. The official weather report showed that it had snowed from 8:12 a. m. to 8:28 a. m. and from 10:45 a. m. to 2:13 p. m. on Sunday, and from 7:14 p. m. Sunday to 3 a. m. Monday. On Monday the temperature ranged from 34 to 24, and on Tuesday from 12 to 1, above zero.

The evidence was insufficient to go to the jury. In the first place, the proximate cause of the plaintiff's fall was her slip on the sidewalk, of which no allegation of negligence is made. She might have fallen if there had been no snow on the cross-walk. To say she would not would be speculation. In the next place, there was no defect or obstruction on the cross-walk, within the meaning of those terms. There was nothing there other than the natural temporary condition caused by the weather for the time being. With the constant alternations from rain to snow, from thawing to freezing, in this trying climate of ours in the winter, such a condition of the streets of a city is inevitable and not chargeable to the city. Cities have a duty to keep the streets free of dangerous defects and obstructions, but such condition is neither.

Evidence was given for the defence showing that the city's street force had worked diligently after the snowfall to remove the snow from the streets, including the locality where the plaintiff fell. The learned trial judge refused to charge as requested by the learned counsel for the city that if such employés did all they could after Sunday to clear the street where the accident happened of snow the verdict must be for the city. The exception to such refusal was well taken; otherwise the city is liable, however diligent. But with several hundred miles of streets to take care of, a city cannot clear them of every fall of snow or covering of ice, nor is it required to try to, for if it snow or freeze today it will rain or thaw tomorrow or soon, and the city may await that event. Taylor v. Yonkers, 105 N. Y. 202, 11 N. E. 642, 59 Am. Rep. 492. There is reason in all things. To employ men enough to keep the streets free at all times of snow and ice would be an expense that cities could not bear, and they are not required to. The question exists only in such climates as we have here. After snow storms the city cannot be expected to do more than open the streets to travel; they cannot clean them of all snow or water, and prevent them from being more or less slippery. Nor could snow and slush be kept off the cross-walks unless the entire street were cleared of them; every passing horse and vehicle would spread them there. Indeed, in order to use sleighs, as is the case in many cities, the snow is and has to be left on the cross-walks.

The accumulation of snow and ice at a particular spot by regular accretions for a considerable length of time until it becomes an ob-

struction, dangerous to passers by, is very different to the present case.

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted. Costs to abide the event.

HIRSCHBERG, P. J., and RICH and MILLER, JJ., concur.

WOODWARD, J. (dissenting). The defendant concedes that on the evening of February 16, 1904, between 8:30 and 9 o'clock, the plaintiff in passing along Bridge street, in the borough of Brooklyn, and after she had reached the cross-walk at Bridge and Nassau streets, fell, and as alleged sustained injuries as a result thereof. There was evidence which justified the jury in finding that upon this cross-walk there was an accumulation of snow trodden into icy formations, leaving the surface rough and uneven; that this general condition had existed for several days; that a fall of snow commenced on Sunday, the 14th, lasting from 8:12 a. m., to 8:28 a. m., and from 10:45 a. m. to 2:13 p. m., and from 7:14 p. m. to 3 a. m. of Monday, the 15th, and this accident occurred between 8:30 and 9 o'clock in the evening of the 16th, so that two full working days intervened between the last fall of snow and the accident, and there was evidence to show that the defendant had made its own standard of reasonable care at this point, by providing men and appliances to remove the snow as fast as it fell, or as nearly so as possible. The cross-walk at Bridge and Nassau streets is in use by large numbers of people. It is a point where the degree of care required to insure the safety of people lawfully using the highway is much higher than it would be in less congested localities or in small cities like Yonkers, and, if the jury believed the plaintiff's evidence that the defendant, though requiring the removal of all snow at this point practically as fast as it fell, had so far neglected this duty as to permit the snow to accumulate and reach an icy and dangerous condition, and to remain in this condition from 3 o'clock in the morning of the 15th to 8:30 or 9 o'clock in the evening of the 16th, I am of opinion that the verdict was justified.

This is not the case of an icy sidewalk, where the duty of cleaning the same is imposed upon adjacent property owners, and where the duty of the city is that of supervision and ultimate liability, but is the case of the city itself assuming the duty of keeping the cross-walks in a reasonably safe condition, and neglecting that duty as it has itself construed it. It has, by its own acts, said that the safety of the public at this point required the immediate removal of falling snow, and the evidence shows that while there were men employed in this work, it was done so negligently that the plaintiff slipped and fell upon the formation two whole working days after the last fall of snow, and it does not appear that this snowfall was accompanied by sleet or by any unusual conditions, and the entire precipitation from the 14th to the 15th was but 2 and $^4/_{10}$ inches. The evidence would seem to indicate that the snow and ice had previously accumulated, and that the snowstorm of the 14th and 15th had simply exaggerated this condition.

○

This case is entirely different from Taylor v. City of Yonkers, 105 N. Y. 202, 11 N. E. 642, 59 Am. Rep. 492, and those which have followed it. In those cases the accident occurred upon sidewalks where the primary duty of removing the snow was upon the abutting property owners, and the weather conditions and the surroundings were entirely different from those of the case at bar. In the Taylor Case, supra, on the night preceding, rain fell which washed the sand from the ice, and then froze, covering everything with a new surface, and making the whole city slippery and dangerous for travel, and the court very properly held that under such circumstances the municipality was not liable. But in the case at bar there appears to have been a light fall of snow, lasting from about 8 o'clock on the morning of February 14th to 3 o'clock on the following morning, and on the evening of February 16th the plaintiff fell upon an accumulation of snow, trodden into icy formations, and was injured, and this at a point where the city had itself established the standard of reasonable care to require the immediate removal of the snow.

I vote for affirmance.