## WADE v. TOWN OF WORCESTER.

(Supreme Court, Appellate Division, Third Department.   September 15, 1909.)

1. HIGHWAYS (§ 188*)—TORTS—INJURIES FROM HIGHWAYS.

A town does not guarantee against accidents upon its highways and is not bound to make them absolutely safe, but only to make them reasonably safe for public use in the ordinary way.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 480; Dec. Dig. § 188.*]

2. HIGHWAYS (§ 192*)—TORTS—HIGHWAYS—NEGLIGENCE.

A part of the road on which plaintiff was riding when injured had been traveled for 40 years without accident, and next to the traveled part, which was 12 feet wide, the westerly bank rose abruptly about 2 feet and extended back to a stone wall, and on the easterly side a bank rose from 20 to 22 inches, but at one place for about 9 feet the bank is only 6 inches high on the easterly side and rises abruptly, so that a team could only push a wagon over it by driving or backing directly across the road. There was a precipitous descent opposite the 9 feet; but the road was substantially straight for some distance on either side thereof.   The wagon in which plaintiff was riding in the nighttime backed over the rise in the road at the latter point and injured her.   *Held*, that it could not be foreseen that any one would drive so as to make it possible to back over the bank, so that the town was not negligent for so constructing the road.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 483–485; Dec. Dig. § 192.*]

3. WITNESSES (§ 389*)—IMPEACHMENT—INCONSISTENT STATEMENT.

Where, in an action for injuries sustained by driving over an embankment on a public road, in which plaintiff's witness, who testified that another was driving, also testified on cross-examination that she did not state after the accident that plaintiff was driving too near the embankment, defendant could show by another witness that she did make such statement in order to discredit her evidence.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 389.*]

Smith, P. J., and Cochrane, J., dissenting.

Appeal from Trial Term, Otsego County.

Action by Pearl Wade against the Town of Worcester.   From a judgment for plaintiff and an order denying motion for new trial, defendant appeals.   Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Holmes & Waterman (George M. Palmer, of counsel), for appellant. M. E. Baldwin, for respondent.

JOHN M. KELLOGG, J.   The plaintiff, Pearl Green, and one Bennett, between 8 and 9 o'clock on a September evening, were driving in a top buggy along a country road which connects the Decatur road running into Worcester and the road running into Westford and is about 3½ miles in length.   The road follows the windings of a creek, and is called the "Gulf road" as it goes along the gulf or valleys through the hilly country.   The road has been traveled about 40 years, and at the place in question has been during that time in sub-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stantially the same condition. No accident ever occurred there before. There are 12 farmhouses upon the road. The town has about 100 miles of highways. The traveled part of the road was about 12 feet wide. Next to the traveled part of the road the westerly bank rises abruptly about two feet, the highland extending back to a stone wall. On the easterly side of the road is another bank, or "shoulder" to the road, as the witnesses call it, rising from 20 to 22 inches from the beaten path. Just northerly of the driveway extending from the road to Conrow's house, this shoulder along the easterly part of the road, for a space of about 9 feet, is only 6 inches in height, but rises abruptly on either side. Opposite the 9 feet is a precipitous descent of about 19 feet. The road opposite the 9 feet, and for some distance on either side of it, is substantially straight. A driveway leads from the road westerly and diagonally to the Conrow house, leaving the road a short distance south of the 9-foot space. Bennett, the driver, was sitting in the middle of the buggy seat. A part of the way the buggy top was up, but as it was dark it was put down, and the track and horse could be seen by the occupants of a wagon. The horse, coming from the south, and before it arrived opposite the 9-foot space mentioned, left the beaten path and went upon the embankment upon the westerly side, presumably mistaking the true path of the Conrow driveway. The driver backed the horse nearly straight across the road, and the wagon and occupants went down the precipice, and the plaintiff was injured.

A town does not assume to make its highways absolutely safe and to guarantee against accident, but is to make them reasonably safe for public use in the ordinary way. A team driving in either way along the road could not get off the precipice except by driving upon the shoulder at a considerable elevation before it arrived at the 9-foot space. Teams would not ordinarily be turning at sharp angles or backing across the road at this place because of the embankment upon both sides. A team could not go down the embankment except in just the way this team did by backing right across the highway into it, and it could not be foreseen that any one would drive so carelessly at this place that it would become necessary or possible to back across the highway. I do not think therefore that the town was negligent in failing to maintain a barrier at this place. The occurrence was so improbable and unnatural that it, or an occurrence of any similar nature, would not ordinarily be anticipated.

The plaintiff's evidence shows that Bennett was driving. Plaintiff's witness Pearl Green testified to that fact. Upon cross-examination she swore she did not state at the Conrow house, immediately after the accident, that the plaintiff was driving up to near the scene of the accident. The defendant then called the witness Waterman and offered to show that the witness Green did make such statement. The evidence related to a matter material to the issue, for if the plaintiff was driving, and succeeded in placing the horse in the position where it was backed down the precipice, it would make her contributory negligence a live question in the case. It was competent to discredit the witness by proving her contradictory statement with reference to this material fact.

The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, P. J., and COCHRANE, J., who dissent.